## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Sokolove, | ) | CASE NO. 19-5049 |
| Plaintiff, | ) | |
| v. | ) | JUDGE_____ |
| | ) | |
| Continental Tire the Americas, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Tire Rack, | ) | |
| Defendants. | | |

## O R D E R

AND NOW, this _____ day of _____ , 2019, upon consideration of the

Motion To Dismiss filed by Defendant Continental Tire the Americas, LLC, and any response thereto,

it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**.  The Complaint is hereby

DISMISSED as to Defendant Continental Tire the Americas, LLC because the Court lacks personal

jurisdiction over it for purposes of this action.

**BY THE COURT:**

_____
                                              J.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Robert Sokolove, | ) | CASE NO. 19-5049 |
| Plaintiff, | ) | |
| v. | ) | JUDGE_____ |
| | ) | |
| Continental Tire the Americas, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Tire Rack, | ) | |
| Defendants. | | |

## MOTION TO DISMISS

Defendant Continental Tire the Americas, LLC, pursuant to Federal Rule of Civil Procedure 12(b)(1), hereby seeks the entry of an order dismissing it from this action on the basis that the Court lacks personal jurisdiction over it. For the reasons more fully stated in the attached Memorandum of Law, Defendant Continental requests that the Court grant this Motion and enter the proposed order filed herewith.

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY: _____
Kevin E. Hexstall
Mohamed N. Bakry
2000 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (215) 575-2600
Facsimile: (215) 575-0856
kehexstall@mdwcg.com
mnbakry@mdwcg.com

*Attorneys for Defendant*
*Continental Tire the Americas, LLC*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Sokolove, | ) | CASE NO. 19-5049 |
| Plaintiff, | ) | |
| v. | ) | JUDGE_____ |
| | ) | |
| Continental Tire the Americas, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Tire Rack, | ) | |
| Defendants. | | |

### MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

"It has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts," *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. ___, 137 S. Ct. 1773, 1779 (2017) (collecting cases), and that federal courts exercise personal jurisdiction to the same extent as the courts of the state in which they sit. *Cruickshank-Wallace v. CNA Fin. Corp.*, 769 Fed. App'x 77, 79 (3d Cir. 2019) (citing Fed. R. Civ. P. 4(k)(1)(A)). "The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb*, 137 S. Ct. at 1779 (citing *Walden v. Fiore*, 571 U.S. 277, 284–285 (2014) (noting that a jurisdictional analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"), and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806–807 (1985) (noting that a defendant must have established "certain minimum contacts with the State" before jurisdiction can arise)).

By this Motion, Continental seeks dismissal of this action against it, under Rule 12(b)(2).

**This Court lacks personal jurisdiction over Continental.**

In one of the first cases to interpret the Fourteenth Amendment for its effect on the exercise of personal jurisdiction by courts in the post-War Union, the Supreme Court held that the reach of courts' power was limited to the geographic limits of the states where they sit. *See Daimler AG v. Bauman*,

571 U.S. 117, 125–126 (2014) (citing *Pennoyer v. Neff*, 95 U.S. 714, 720 (1878) ("The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established.")). Later, the power of the courts was broadened to reach even beyond their states' territorial borders. The assertion of personal jurisdiction was then permitted "when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on." *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). "*International Shoe*'s momentous departure from *Pennoyer*'s rigidly territorial focus, we have noted, unleashed a rapid expansion of tribunals' ability to hear claims against out-of-state defendants when the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum." *Daimler*, 1571 U.S. at 128.

"Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "Specific jurisdiction has been cut loose from *Pennoyer*'s sway," and the Supreme Court "has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' *i.e.*, specific jurisdiction." *Daimler*, 571 U.S. at 132–133 (citation omitted).

But unlike the expansion of the scope of specific jurisdiction, the Supreme Court has "declined to stretch general jurisdiction beyond limits traditionally recognized." *Id.* For this reason, "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. The *Goodyear* Court held that courts "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *International Shoe*, 326 U.S. at 317). The Court went on to clarify where any defendant is fairly regarded as at

home:  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924.

The Court should dismiss Continental from this action because there is no basis to conclude that personal jurisdiction exists over it, either under the specific or case-linked theory, or else the general or all-purpose theory.

### There is no basis for the exercise of specific jurisdiction over Continental.

"'Specific' or 'case-linked' jurisdiction 'depends on an "affiliatio[n] between the forum and the underlying controversy'" (*i.e.*, an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')." *Walden*, 571 U.S. at 283 n.6.

The Complaint in this case alleges that Mr. Sokolove purchased tires over the internet from Tire Rack, located in Indiana, and that they were installed on his vehicle in Rehoboth, Delaware.  The Complaint fails to allege <u>any</u> contact with Pennsylvania by Continental, let alone one giving rise to the causes of action asserted against it.  Instead, the claims against Continental are all premised on its conduct in designing, manufacturing, and selling the tire, which took place outside of Pennsylvania.

In *Walden v. Fiore*, a federal agent stopped the plaintiffs in the Atlanta, Georgia airport, where they had a layover between Puerto Rico and their home in Nevada.  Cash gambling winnings were seized from the plaintiffs by the Atlanta-based agent in the Atlanta airport, and the plaintiffs continued home without their winnings.  After the prosecutor declined to bring charges, and the money was returned to them in Nevada, the plaintiffs sued the agent—in Nevada—for wrongfully depriving them of their funds.  The case was dismissed for lack of personal jurisdiction, and Supreme Court affirmed.  Because the federal agent had contact only with the plaintiffs and not with the <u>forum itself</u>—the State of Nevada—the agent lacked the minimum contacts with the forum necessary to give rise to specific

personal jurisdiction. *Walden*, 571 U.S. at 279–283; *see also id.* at 284 ("First, the relationship must arise out of contacts that the defendant himself creates with the forum State. . . . Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") (citations omitted) (emphasis in original). Thus, even in *Walden*, where the agent-defendant knew he was harming the Nevada plaintiffs and that they would experience such harm in Nevada, the lack of contact between the agent and Nevada was fatal to jurisdiction.

The basis for specific jurisdiction here is even less defensible than in *Walden*. The Complaint fails to allege any contact that Continental had with Pennsylvania giving rise to this action. Instead, even as alleged by Mr. Sokolove, the Complaint asserts that on March 15, 2016 he bought tires over the internet from a company in Indiana, which were installed in Delaware. Complaint ¶¶ 8 & 10. Mr. Sokolove then drove his vehicle into Pennsylvania sometime thereafter, where it crashed on August 3, 2017. That, of course, is not a contact that Continental had with Pennsylvania. *See Walden, supra; see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–292 & 297–298 (1980) (reaffirming the long-settled requirement from *International Shoe* that to support specific jurisdiction a defendant must have sufficient minimum contacts with the forum state to create a substantial connection with it based on the efforts of the defendant to serve the market in that state, and rejecting the assertion of jurisdiction—based on "a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state court jurisdiction"—because it was based on the plaintiff's act of driving the defendants' vehicle from New York into Oklahoma, where suit was filed).

Continental had no contact with Pennsylvania giving rise to the causes of action asserted in this case. Therefore, the Court lacks specific personal jurisdiction over it. *Walden*, 571 U.S. at 279–284; *Daimler*, 571 U.S. at 126–127 (noting that specific jurisdiction, from the seminal case of *International*

*Shoe*, only arises in a case "in which the in-state activities of the corporate defendant 'ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on'").

### There is no basis for the exercise of general jurisdiction over Continental.

In *Daimler*, the Supreme Court re-emphasized and repeated the core holding from *Goodyear*, that the Fourteenth Amendment limits the exercise of personal jurisdiction, for claims not arising from contact with the forum, to those instances where a defendant's presence in the forum state is such that it is fairly regarded as "at home" there.

> [T]he place of incorporation and principal place of business are "paradigm bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010) ("Simple jurisdictional rules . . . promote greater predictability."). These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler*, 571 U.S. at 137 (citation omitted) (brackets and ellipsis omitted).

Here, the Complaint does not offer <u>any</u> showing "that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), that Continental had operations within Pennsylvania, let alone continuous corporate operations that are so substantial, and of such a nature, as to justify suit against Continental for a cause of action premised on conduct outside of Pennsylvania. That is, the Complaint gives this Court no justification to conclude that Continental, by reason of ties to Pennsylvania, is fairly regarded as "at home" here.

Continental is a limited liability company, but it is well recognized that "the personal jurisdiction rules governing corporations generally have been applied to limited liability companies as well." *Magna Powertrain de Mex. S.A. de C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828 (E.D. Mich. 2016) (citation omitted). In fact, the *Daimler* case itself identified the LLC involved in terms of its place of formation and principal place of business. *See Daimler*, 571

U.S. at 120–121 (identifying the defendants in that case as follows: "DaimlerChrysler Aktiengesellschaft (Daimler), a German public stock company, headquartered in Stuttgart, that manufactures Mercedes-Benz vehicles in Germany," and "Mercedes-Benz USA, LLC (MBUSA), a subsidiary of Daimler incorporated in Delaware with its principal place of business in New Jersey"). Other courts have recognized this. *See, e.g., Finn v. Great Plains Lending, LLC,* 2016 U.S. Dist. LEXIS 21558, at 7 n.3, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016) ("While Great Plains is an LLC and not a corporation, the reasoning of *Daimler* applies with equal force. Although the language of *Daimler* speaks only in terms of corporations, the subsidiary at issue in *Daimler* was Mercedes-Benz USA, LLC ('MBUSA'). In determining whether the United States District Court for the Northern District of California could exercise general jurisdiction over Daimler-Chrysler Aktiengesellschaft ('Daimler'), the Supreme Court concluded that the district court could not exercise general jurisdiction over Daimler because 'neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there.' Even though MBUSA is an LLC, the Court looked to MBUSA's place of incorporation and principal place of business to determine whether it was essentially at home in California and thus subject to general jurisdiction in the State."); *see also Kurz v. Holiday Hosp. Franchising, LLC,* 2019 U.S. Dist. LEXIS 175193 (E.D. Pa. Oct. 7, 2019) (granting a motion to dismiss because the defendant limited liability company is not fairly regarded as at home, under *Daimler,* in the forum state); *Mitchell v. Fairfield Nursing & Rehab. Ctr., LLC,* 2016 U.S. Dist. LEXIS 46390, at *18 (N.D. Ala. Apr. 6, 2016) ("Several courts have extended the rationale of *Daimler* to LLCs.") (citations omitted); *cf. Am. Gurantee & Liab. Ins. Co. v. Arch Ins. Co.,* 2017 U.S. Dist. LEXIS 177496, at *18 (W.D. Pa. Oct. 26, 2017) (concluding that a limited liability company "cannot be hauled into court on the basis of general personal jurisdiction in Pennsylvania, which is neither its state of incorporation nor the state of its principal place of business"); *Miller v. Native Link*

*Constr., LLC.*, 2017 U.S. Dist. LEXIS 131021, at *88 (W.D. Pa. Aug. 17, 2017) (concluding that the defendant limited liability company "was not organized under the law of this Commonwealth and never maintained its principal place of business here," and concluding that "[g]eneral jurisdiction is therefore lacking"); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 U.S. Dist. LEXIS 114733, at *6 n.2 & *13–14 (E.D. Pa. July 24, 2017) (finding lack of general jurisdiction over many defendants, including LLCs, because all of them "are not incorporated in Pennsylvania and do not have their principal place of business in Pennsylvania").

Indeed, this is exactly how the Supreme Court itself has interpreted *Daimler*. In *BNSF Railway v. Tyrrell*, the Court reversed a finding of jurisdiction by the Montana Supreme Court, which rejected the application of *Daimler* based on the type of defendant at issue: whereas the target defendant in *Daimler* was a corporation, *BNSF* involved a railroad, so different rules should apply. But the U.S. Supreme Court held explicitly that *Daimler*'s "fairly regarded as at home" test applies to all defendants, regardless of the type:

> The Montana Supreme Court distinguished *Daimler* on the ground that we did not there confront "a [Federal Employer's Liability Act] claim or a railroad defendant." The Fourteenth Amendment due process constraint described in *Daimler*, however, applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued.
>
> BNSF, we repeat, is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana "as to render [it] essentially at home" in that State.

*BNSF Ry. v. Tyrrell*, 581 U.S. ___, 137 S. Ct. 1549, 1558–1559 (2017) (citing *Daimler*, 571 U.S. at 127).

As stated in the Notice of Removal, Continental is a limited liability company whose citizenship can be traced only to Germany. Citizenship, for the purpose of determining subject matter

jurisdiction is a different question than determining personal jurisdiction based on a defendant's corporate home.[*]

For purposes of analyzing the limits of the exercise of personal jurisdiction, the jurisprudence of the Supreme Court itself and other courts interpreting *Goodyear*, *Daimler*, and *BNSF*, requires the analysis to focus on the place in which Continental can be fairly regarded as "at home." Continental is formed under the laws of the State of Ohio, and maintains its principal place of business in South Carolina. Only in those places is it fairly regarded as at home. *See Daimler*, 571 U.S. at 137 (a corporate defendant's home is "equivalent" to an individual defendant's domicile).

Because Continental is neither formed under the laws of the Commonwealth nor principally based here, the Court lacks general jurisdiction over it, and should dismiss Continental from this action.

### Registration under the Pennsylvania corporations code cannot create the basis for personal jurisdiction.

"*Goodyear* did not hold that a corporation may be subject to general jurisdiction <u>only</u> in a forum where it is incorporated or has its principle place of business; it simply typed those places

---

[*] *Compare BNSF Ry. v. Tyrrell*, 137 S. Ct. at 1558–1559 (*Daimler*'s "at home" rule applies to entities other than corporations), *Finn*, 2016 U.S. Dist. LEXIS 21558, at 7 n.3, 2016 WL 705242, at *3 n.3 (same), *with Americold Realty Tr. v. ConAgra Foods, Inc.*, 577 U.S. ___, 136 S. Ct. 1012, 1017 (2016) ("We also decline an *amicus'* invitation to apply the same rule [regarding citizenship, for analyzing <u>subject matter</u> jurisdiction] to an unincorporated entity that applies to a corporation— namely, to consider it a citizen only of its State of establishment and its principal place of business. When we last examined the 'doctrinal wall' between corporate and unincorporated entities in 1990, we saw no reason to tear it down. Then as now we reaffirm that it is up to Congress if it wishes to incorporate other entities into 28 U.S.C. §1332(c)'s special jurisdictional rule.") (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990)). In other words the same Supreme Court that held in *Americold* (unanimously) that a limited liability company is a citizen under § 1332 only where its members are citizens, also held in both *Daimler* (by a vote of 8 + 1 to 0) and *BNSF* (by a vote of 8 to 1) that entities other than a corporation are deemed "at home" for personal jurisdiction purposes only where their place-of-formation and principal place of business are located.

paradigm all-purpose forums." *Daimler*, 571 U.S. at 137 (citation omitted). The Court should interpret the word "paradigm" for what it means:

> <u>Accordingly</u> the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."
>
> Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Daimler*, 571 U.S. at 139 (emphasis added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). It is important to note the Supreme Court's emphasis on the "primary conduct" of a business, without reference to its conduct business-wide. In fact, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20.

Continental has exercised its rights to structure its business and enterprise with formation under the laws of Ohio and principal place of business in South Carolina. <u>Those</u> are the paradigm forums for asserting general jurisdiction over Continental. Mr. Sokolove appears to assert that the possibility of some-other-place satisfying *Goodyear* and *Daimler*'s requirement of "at home" can be found here because Continental is registered to conduct business here. Complaint ¶ 4. That formerly reigning precedent did not survive *Daimler*. To allow the exercise of general jurisdiction based simply on compliance with a state's registration statute would directly conflict with *Daimler*, and violate important limits on state power enshrined in the Constitution.

### Pennsylvania's registration scheme

"Every state has a registration statute . . . . designed to ensure that nonresident corporations are accountable for their actions within the state." Tanya J. Monestier, *Registration Statutes, General Jurisdiction, And The Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1363–1364 (2014–2015). Pennsylvania is not unique in this regard, and requires foreign companies to register with the Department of State as a precondition to doing business in the Commonwealth. 15 Pa. C.S. § 411(a). But Pennsylvania is unique, in that it purports to confer general jurisdiction by reason of such registration. Monestier, *The Fallacy of Consent*, 36 Cardozo L. Rev. at 1366 ("Only one state, Pennsylvania, actually purports to directly address the jurisdictional consequences of registering to do business.").

The Pennsylvania Judicial Code provides as follows:

> (a)  General rule. — The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:
>
> . . . .
>
> (2)  Corporations.
>
> > (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> >
> > (ii) Consent, to the extent authorized by the consent.
> >
> > (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a)(2).

There has been a handful of courts holding that the text of Pennsylvania's statutes permits jurisdiction over foreign entities based on their registration under the state corporations code. But none

is precedential and none is persuasive. Moreover, the limitation on personal jurisdiction involves constitutional limits imposed on the exercise of power over persons and property, and is not a matter of construing Pennsylvania law. *See, e.g., Bristol-Myers Squibb*, 137 S. Ct. at 1779; *Daimler*, 571 U.S. at 125 ("We therefore inquire whether the Ninth Circuit's holding comports with the limits imposed by federal due process.").

### Long-arm jurisdiction is unnecessary when a defendant is located in a state.

The following quote perhaps most succinctly demonstrates the confusion inherent in rulings permitting the exercise of general jurisdiction based on a foreign company's registration in Pennsylvania: "A court may base its general jurisdiction over a defendant-corporation upon the defendant-corporation's relationship with the forum state or the defendant-corporation's consent to general jurisdiction in the forum state." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 293 (M.D. Pa. 2018). The *Gorton* court went onto conclude that registration under the Pennsylvania corporations code subjected the foreign defendant to "general jurisdiction" on the basis that it "consented" to it. *Id.* at 300.

But a state's long-arm statute is the means by which <u>specific</u> personal jurisdiction is exercised over a defendant <u>not</u> at home in the state: an out-of-state defendant. *See* 42 Pa. C.S. § 5322 ("Bases of personal jurisdiction over persons outside this Commonwealth"); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 902 (2011) (opinion of Ginsburg, J.) ("When industrial accidents happen, a long-arm statute in the State where the injury occurs generally permits assertion of jurisdiction, upon giving proper notice, over the <u>foreign</u> manufacturer.") (emphasis added); *Burger King v. Rudzewicz*, 471 U.S. at 464 (analyzing, in this very famous specific jurisdiction case, "whether this exercise of long-arm jurisdiction offended 'traditional conceptions of fair play and substantial justice'").

So-called long-arm jurisdiction is not necessary where a defendant is found in and at home in a state. *See, e.g., Daimler*, 571 U.S. at 127 ("As we have since explained, '[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'") (quoting *Goodyear*, 564 U.S. at 919). The outer limit of general jurisdiction is where a foreign company is "at home." *Daimler*, 571 U.S. at 137 ("*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'") (quoting *Goodyear*, 564 U.S. at 924).

Section 5301 in Pennsylvania's judicial code is truly meant to govern general jurisdiction. *See* 42 Pa. C.S. § 5301(a) (premising the statute as identifying those contacts with the Commonwealth that "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person," without respect to the cause of action asserted); *see also Daimler*, 571 U.S. at 127 (noting that general jurisdiction will "justify suit against [a foreign company] on causes of action arising from dealings entirely distinct from" in the forum state, and then immediately reasserting that general jurisdiction allows a court "to hear any and all claims against [foreign companies] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State") (citations omitted) (emphasis added).

That tie between a company's home and general jurisdiction is why, in its text, Pennsylvania's general jurisdiction statute allows for the assertion of any claim arising anywhere in the world if its conditions are satisfied. *See* 42 Pa. C.S. § 5301(b) ("When jurisdiction over a person is based upon this section any cause of action may be asserted against him, whether or not arising from acts

enumerated in this section."); *Daimler*, 571 U.S. at 127 (noting that general jurisdiction is proper where a foreign company has "continuous corporate operations within a state [that] are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities"); *see also id.* at 122 ("Instructed by *Goodyear*, we conclude Daimler is not 'at home' in California, and cannot be sued there for injuries plaintiffs attribute to MB Argentina's conduct in Argentina.").

Thus, so-called long-arm jurisdiction is not appropriate where general jurisdiction may be asserted over companies "at home" in the forum state. *Daimler*, 571 U.S. at 133 n.11 ("As the Court made plain in *Goodyear* and repeats here, general jurisdiction requires affiliations 'so "continuous and systematic" as to render [the foreign corporation] essentially <u>at home</u> in the forum State,' *i.e.*, <u>comparable to a domestic enterprise in that State</u>.") (quoting *Goodyear*, 564 U.S. at 919) (emphasis added). Continental, an Ohio limited liability company headquartered in South Carolina, is thus not subject to general jurisdiction in Pennsylvania, because it does not have a tie with Pennsylvania analogous to an in-state domicile.

### Registration does not equate to consent to the exercise of jurisdiction.

General jurisdiction appropriately exercised under the Supreme Court's interpretation of the Constitution is entirely distinct from whether a defendant has <u>consented</u> to jurisdiction in a forum. Consent to suit in the jurisdiction is given <u>by</u> the defendant, and is not properly an element of an argument asserted <u>against</u> the defendant. That difference explains why, since 2011, the Supreme Court has handed down six opinions, all of them invalidating the exercise of personal jurisdiction, while in the same period, and beyond, it has not decided a consent case. *See Bristol-Myers Squibb*, 137 S. Ct. 1773 (2017); *BNSF Railway*, 137 S. Ct. 1549 (2017); *Walden*, 571 U.S. 277 (2014); *Daimler*, 571 U.S. 117 (2014); *Goodyear*, 564 U.S. 915 (2011); *J. McIntyre*, 564 U.S. 873 (2011).

The portion of 42 Pa. C.S. § 5301 that purports to provide for general jurisdiction to arise from registration to conduct business is a hold-over from the pre-*Daimler* era.  The same statute also still expressly says that general jurisdiction may be exercised over every company that carries on "a continuous and systematic part of its general business within this Commonwealth," 42 Pa. C.S. §5301(a)(2)(iii), even though *Daimler* invalidated almost that exact phrasing as "unacceptably grasping." *Daimler*, 571 U.S. at 137–138 ("Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'   That formulation, we hold, is unacceptably grasping.").  Thus, the fact that § 5301 still facially provides for jurisdiction-by-registration does not answer the question.  The question this Court must ask is whether the exercise of personal jurisdiction over Continental in this case comports with the limits of the Due Process Clause of the 14th Amendment, as interpreted by the Supreme Court numerous times in the last several years.

The Third Circuit's decision in *Bane v. Netlink*, 925 F.2d 637 (3d Cir. 1990), does not help to answer this question.  Decided twenty-four years before *Daimler*, the *Bane* court stated as follows:

> Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction. . . .
>
> . . . . We need not decide whether authorization to do business in Pennsylvania is a "continuous and systematic" contact with the Commonwealth for purposes of the dichotomy between "general" and "specific" jurisdiction because such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts.

*Bane*, 925 F.2d at 640 (quotation of § 5301 omitted).

Respectfully, the Third Circuit's *Bane* opinion ignores the fact that "consent" and "qualification as a foreign corporation" are two underlined independent provisions in the plain text of § 5301, and instead simply asserts that "registration . . . carries with it consent."  This failure to recognize the

14

statute's structure, or the General Assembly's intent that "the entire statute [be] effective and certain," 1 Pa. C.S. § 1922(2), carries with it no citation. But its naked assertion of jurisdiction-by-consent-by-registration has become the root citation dividing courts on this question. *Compare Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 U.S. Dist. LEXIS 55608, at *17–18 (E.D. Pa. Mar. 29, 2019) ("Given the wording of the Pennsylvania long-arm statute, which provides notice of the jurisdictional consequences of registering to do business in this Commonwealth lacking in other states' registration statutes, and the fact that *Daimler* did not address consent as a basis for personal jurisdiction—and absent any indication from the Third Circuit that *Bane* is no longer good law—this Court will continue to adhere to *Bane*."), *with Sullivan v. A. W. Chesterton, Inc. (In re Asbestos Prods. Liab. Litig. No. VI)*, 384 F. Supp. 3d 532, 534 (E.D. Pa. 2019) ("Federal and state courts in Pennsylvania have struggled to divine the applicability of *Daimler* to the Pennsylvania registration scheme with mixed results. Building on that jurisprudence, this Court concludes that: (1) the Pennsylvania statutory scheme that requires foreign corporations to register to do business and, therefore, to consent to general personal jurisdiction in Pennsylvania, offends the Due Process Clause and is unconstitutional; and (2) the Third Circuit's pre-*Daimler* decision in *Bane v. Netlink, Inc.*, finding that, by registering to do business in Pennsylvania, a foreign corporation consents to general personal jurisdiction, is irretrievably irreconcilable with the teachings of *Daimler*, and can no longer stand.").

Despite the fact that *Bane* found "consent" without any analysis, it attempted to buttress its logic by stating: "By registering to do business in Pennsylvania, Netlink 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Bane*, 925 F.2d at 640 (quoting *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))). This rationale is untenable, not least because *Burger*

*King* and *Hanson v. Denckla* were specific jurisdiction cases, and "purposeful availment" is a specific jurisdiction concept: none of this has to do with general jurisdiction. *See, e.g., Burnham v. Superior Court of Cal.*, 495 U.S. 604, 638 n.12 (1990) (Brennan, J., concurring) ("[I]n the context of specific jurisdiction, we consider whether a defendant 'has availed himself of the privilege of conducting business' in the forum State, or has 'invok[ed] the benefits and protections of its laws' . . . .") (quoting *Burger King*, 471 U.S. at 475 & 476, and *Hanson*, 357 U.S. at 253).

But further, constructing a multi-step argument to maintain jurisdiction over a defendant, who is resisting it, is not necessary if the defendant did in fact consent to jurisdiction. Simply pointing to the defendant's actual consent is much simpler, more direct, and constitutionally sound than a holding that a defendant not fairly regarded as at home is subject to general jurisdiction because it registered to conduct business – though the defendant may not conduct even the level of 'substantial' business here that used to be sufficient for jurisdiction prior to *Goodyear, Daimler, BNSF,* and *Bristol-Myers Squibb*.

*Bane* itself was without benefit of the Supreme Court's recent and serial interpretation of the limits on the exercise of personal jurisdiction in *Bristol-Myers Squibb, BNSF, Walden, Daimler, Goodyear,* and *J. McIntyre*, mentioned above. And some courts, relying on *Bane*, have sought to justify their exercise of jurisdiction over a foreign company under § 5301(a)(2)(i) by stating that "consent" is analytically separate from "general jurisdiction." But this assertion does not survive the merest scrutiny. Those cases divine jurisdiction to arise under § 5301—the general jurisdiction statute—because the out-of-state defendant "consented" to jurisdiction when it became registered here." *E.g., Gorton*, 303 F. Supp. 3d at 296 ("Pursuant to section 5301(a), 'registration by a foreign corporation [in Pennsylvania] carries with it consent to be sued in Pennsylvania courts.' *Bane*, 925 F.2d at 640.")

The exercise of general jurisdiction, founded on § 5301(a)(2)(i)'s criterion of "qualification as a foreign corporation," does not comport with the constitutional limits on a state's exercise of personal jurisdiction as recognized by *Daimler* and its progeny. "Consent" found merely in a foreign company's registration, which is <u>required</u> under 15 Pa. C.S. § 411(a), does not satisfy the <u>constitutional</u> requirement that general jurisdiction be limited to those places where a foreign company is fairly regarded as "at home." *Daimler*, 571 U.S. at 137. Every state has a requirement that foreign companies register in order to conduct business there, but *Daimler* held that a company operating nationally is <u>not</u> subject to general jurisdiction in every state. "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. <u>A corporation that operates in many places can scarcely be deemed at home in all of them</u>." *Daimler*, 571 U.S. at 139 n.20 (emphasis added).

### Consent supporting jurisdiction must be voluntary.

Continental does not dispute that a company has the right to consent to the exercise of personal jurisdiction in a jurisdiction. The archetypical example is a clause in a contract. *Cf., e.g., C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 415 (2001) ("The American Arbitration Association Rules to which the clause refers provide: 'Parties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.'"). More generally, the Supreme Court has recognized that a business has the right to structure its business operations and to know with some confidence and predictability beforehand, where the places are that it might be subject to suit:

> If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary

> conduct with some minimum assurance as to where that conduct will and
> will not render them liable to suit."

*Daimler*, 571 U.S. at 139 (quoting *Burger King*, 471 U.S. at 472); *see also Walden*, 571 U.S. at 284 ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.") (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 291–292); *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (noting that "even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment") (citing *World-Wide Volkswagen*, 444 U.S. at 294).

To premise the conclusion that Continental's registration equates to consent to jurisdiction, the Court must conclude that the consent was voluntarily given. *Daimler*, 571 U.S. at 139 (noting the ability of companies to structure their operations with "assurance as to where that conduct will and will not render them liable to suit" and in the very same breath <u>rejecting</u> the "exorbitant" contention that operations in every state would render the defendant liable to suit in every state for causes of action arising even in Argentina). In *Birchfield v. North Dakota*, 579 U.S. \_\_\_, 136 S. Ct. 2160 (2016), the Supreme Court analyzed the voluntariness of a driver's "consent" to having his blood drawn, where a state statute decreed such consent by operation of having a license and driving on public roads. After noting that every search consented-to is reasonable, the Court held that implied-consent laws unfairly trammel drivers' constitutional rights because they impose penalties for refusal to allow blood to be taken. *Birchfield*, 136 S. Ct. at 2185 ("There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads."). The Court ultimately held that it was <u>not</u> reasonable to presume that voluntarily obtaining a license translates to consent to having blood drawn. *Id.* at 2186 ("[R]easonableness is always the touchstone of Fourth

Amendment analysis," "[a]nd applying this standard, we conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.") (citation omitted).

A similar result should pertain here. There are certainly consequences to Continental's having registered to conduct business within the Commonwealth of Pennsylvania. There would be, additionally, consequences if Continental were to decide to carry on its business within the Commonwealth. But the deprivation of its Fourteenth Amendment liberty interest, *see Daimler*, 571 U.S. at 139, *Walden*, 571 U.S. at 284, *Bristol-Myers Squibb*, 137 S. Ct. at 1781, should not be such a consequence. No Court has articulated a satisfactory rationale for how voluntary consent can be found in mandatory business registration. *Cf. Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. ___, 135 S. Ct. 1932, 1948 (2015) (adjudication by a bankruptcy judge is permissible as long as a litigants consent thereto is "knowing and voluntary"); *Roell v. Withrow*, 538 U.S. 580, 587 (2003) (adjudication of claims by a magistrate judge permissible "so long as the parties have in fact voluntarily consented"); *Lapides v. Bd. of Regents*, 535 U.S. 613, 620 (2002) (exercise of jurisdiction over a case by a federal court permitted because the defendant "voluntarily invoked the federal court's jurisdiction").

Continental has not voluntarily consented to jurisdiction in Pennsylvania for purposes of this case. Therefore, the exaction of "consent" under § 5301 is invalid and violates the Due Process Clause of the Fourteenth Amendment. Based upon the above, the Court should dismiss Continental from this case.

### To the extent it gives rise to jurisdiction by "consent," Pennsylvania's requirement of registration violates the dormant commerce clause.

*Daimler* recognized that <u>voluntary</u> consent, *i.e.* a corporation signing a contract or otherwise voluntarily submitting itself to general jurisdiction, remains a valid basis for personal jurisdiction. The <u>involuntary</u> subjection of a company to general personal jurisdiction based on a state's regulatory scheme for businesses clearly violates the Fourteenth Amendment's Due Process Clause, because it

holds the privilege of doing business hostage until the foreign corporation gives up the ransom of "consent" to jurisdiction.

But in addition to the Due Process Clause, the Commerce Clause of Article 1 of the Constitution also limits state power. "At the beginning Chief Justice Marshall described the federal commerce power with a breadth never yet exceeded. He made emphatic the embracing and penetrating nature of this power by warning that effective restraints on its exercise must proceed from political rather than from judicial processes." *Wickard v. Filburn*, 317 U.S. 111, 120 (1942) (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 194–195 (1824)). And so, "[a]lthough the Commerce Clause is written as an affirmative grant of authority to Congress, th[e Supreme] Court has long held that in some instances it imposes limitations on the States absent congressional action." *South Dakota v. Wayfair, Inc.*, 585 U.S. ___, 138 S. Ct. 2080, 2089 (2018). The exact target of the so-called Dormant Commerce Clause's limitation on state power are those "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue v. Davis*, 553 U.S. 328, 338 (2008) (citation omitted); *Associated Builders & Contractors v. City of Jersey City*, 836 F.3d 412, 417 (3d Cir. 2016) (same).

In this instance, the Dormant Commerce Clause prohibits Pennsylvania from exacting "consent" by fiat, premised on a mandatory registration scheme for out-of-state businesses.

> [I]t is far from apparent that registration amounts to consent (whether express or implied) to general jurisdiction. Registration does not look like any other form of consent recognized in the jurisdictional content; it bears very little resemblance, for instance, to forum selection clauses or submission. Moreover, the consent that underpins registration-based general jurisdiction is coercive. It is demanded by the state as the price of admission into the state, without the state relinquishing anything in return. It is not genuine, free, or voluntary. Accordingly, while consent can provide a basis for jurisdiction, registration to do business cannot meaningfully be regarded as consent. Additionally, registration-based jurisdiction does not fit well into the landscape of general jurisdiction. It could eliminate the need for minimum contacts altogether; it results in

> universal and exorbitant jurisdiction; it is conceptually misaligned with doing business as a ground for jurisdiction; and it promotes forum shopping.

Monestier, *The Fallacy of Consent*, 36 Cardozo L. Rev. at 1413.

The Dormant Commerce Clause's limit on the exercise of state power to the detriment of out-of-state economic actors prevents the exercise of general personal jurisdiction over Continental in Pennsylvania because it is a foreign company now the subject of a suit in this Court for adjudication for entirely extra-territorial activities. That is ***exactly*** what the Dormant Commerce Clause prohibits:

> It is therefore apparent that the Illinois statute is a direct restraint on interstate commerce and that it has a sweeping extraterritorial effect. Furthermore, if Illinois may impose such regulations, so may other States; and interstate commerce in securities transactions generated by tender offers would be thoroughly stifled. In *Shafer v. Farmers Grain Co.*, supra, at 199, the Court held that "a state statute which by its necessary operation directly interferes with or burdens [interstate] commerce is a prohibited regulation and invalid, regardless of the purpose with which it was enacted." *See also Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 806 (1976). ***The Commerce Clause also precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State***. In *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 775 (1945), the Court struck down on Commerce Clause grounds a state law where the "practical effect of such regulation is to control [conduct] beyond the boundaries of the state . . . ." The limits on a State's power to enact substantive legislation are similar to the limits on the jurisdiction of state courts. In either case, "any attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Shaffer v. Heitner*, 433 U.S. 186, 197 (1977).
>
> Because the Illinois Act purports to regulate directly and to interdict interstate commerce, including commerce wholly outside the State, it must be held invalid as were the laws at issue in *Shaffer v. Farmers Grain Co.* and *Southern Pacific*.

*Edgar v. Mite Corp.*, 457 U.S. 624, 641–643 (1982) (emphasis added).

The Fourteenth Amendment's "liberty" concern, *Walden, supra*, is precisely regarding one state's application of law and procedure to another state's citizen. The Supreme Court, in *Goodyear*,

*Daimler, BNSF,* and other cases, has expressly clarified that the exercise of jurisdiction works no due process violation if a company is "at home" in a state, or if the company voluntarily consents to jurisdiction. But what the Supreme Court has never done, and what its precedents cannot support, is hold that an out-of-state company's mere registration pursuant to the regulatory scheme of a state, amounts to the empowerment of that state-of-registration to deprive the out-of-state company of its liberty and property based on claimed tortious behavior entirely out of state. That would be, absolutely, the application of a state's regulatory scheme to a citizen of a different state, to that foreign citizen's detriment. That offends the Dormant Commerce Clause, and also strikes at the heart of the Fourteenth Amendment's Due Process Clause. *Healy v. Beer Inst.,* 491 U.S. 324, 333 n.9 (1989) (a state action violates the dormant commerce clause if it would tend to stifle commerce).

Therefore, the Court should recognize the Dormant Commerce Clause limits of Pennsylvania's assertion of jurisdiction, and conclude that Continental is not subject to personal jurisdiction on the basis that it is registered here.

**WHEREFORE,** the Court should grant this Motion and dismiss Continental from this action, for lack of personal jurisdiction.

> MARSHALL DENNEHEY WARNER
> COLEMAN & GOGGIN
>
> BY:   _____
> Kevin E. Hexstall
> Mohamed N. Bakry
> 2000 Market Street, Suite 2300
> Philadelphia, PA  19103
> Telephone:  (215) 575-2600
> Facsimile:  (215) 575-0856
> kehexstall@mdwcg.com
> mnbakry@mdwcg.com
>
> *Attorneys for Defendant*
> *Continental Tire the Americas, LLC*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing *Motion to Dismiss* was served this day by email and regular U.S.

mail, postage prepaid, upon the following:

> Joseph A. Cullen, Jr.
> Stark & Stark
> 777 Township Line Road
> Suite 120
> Yardley, PA 19067-5559
> jcullen@stark-stark.com
>
> *Attorney for Plaintif*

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: _____

Date: November 4, 2019